CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 12 2007

JOHN F. CORCORAN, CLERK
BY: _____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| MICHAEL W. MILLER, NO. 333568,<br>Petitioner, | ) ) ) | Civil Action No. 7:06-cv-00611 |
| v. | ) ) | **MEMORANDUM OPINION** |
| GENE M. JOHNSON,<br>Respondent. | ) ) ) | **By: Hon. Glen E. Conrad**<br>**United States District Judge** |

Petitioner Michael W. Miller, a Virginia inmate proceeding pro se, filed this action as a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Petitioner challenges the validity of his convictions in the Circuit Court of Page County. The petition is presently before the court on the respondent's motion to dismiss. For the reasons set forth below, the court will grant the respondent's motion.

## FACTUAL AND PROCEDURAL SUMMARY

On February 18, 2004, a jury convicted petitioner of eight counts of carnal knowledge, twelve counts of rape, and two counts of forcible sodomy.[1] The Commonwealth of Virginia's evidence against petitioner adduced at trial included, inter alia, the victim's testimony, DNA evidence, and seventeen letters petitioner wrote to the victim, after his indictment, in violation of a no-contact order upon which his release on bond was conditioned. Petitioner testified on his own behalf. On May 25, 2004, he was sentenced to imprisonment for a term of eighty-six years.

Petitioner subsequently appealed his convictions to the Court of Appeals of Virginia, alleging that the trial court committed the following errors: failing to disqualify the Office of the

---

[1] The victim was a female child of whom petitioner had custody. The charges against petitioner were based on allegations that he had sexual relations with the victim when she was twelve and thirteen years old. The victim was fourteen years old at the time of the trial. Although the victim is occasionally referred to by parties in the trial court as petitioner's daughter, this was disproved.

Commonwealth's Attorney; appointing an attorney to the recanting victim; allowing the prosecutor to re-call the recanting victim; placing a bailiff between petitioner and the victim during the victim's testimony; failing to timely arraign petitioner; abandoning its judicial role by questioning petitioner; and refusing to grant petitioner's suppression motion. Petitioner also contended the evidence adduced at trial was insufficient to sustain his convictions. By per curiam opinion and order entered on December 8, 2004, the petition for appeal was denied by a single judge of the Court of Appeals.

In its unreported per curiam opinion, the Court of Appeals determined that, "[b]ased upon the circumstances of the case and a review of the record, the record does not establish that the trial judged abused his discretion in denying [petitioner's] request to disqualify the Office of the Commonwealth's Attorney." The Court reasoned, in relevant part:

> The trial judge held a hearing on [petitioner's] request to disqualify the Office of the Commonwealth's Attorney. On appeal, [petitioner] contends his right to due process was violated when the trial court failed to disqualify the office because an Assistant Commonwealth's Attorney previously represented him for a number of years. [Petitioner] argues the Assistant Commonwealth's Attorney represented him in domestic matters involving the child and rendered legal advice to him on the criminal charges.
>
> > The due process rights of a criminal defendant under both the Virginia and United States constitutions are violated when a Commonwealth's Attorney who has a conflict of interest relevant to the defendant's case prosecutes the defendant. However, the question whether there is a conflict of interest is dependent upon the circumstances of the individual case, and the burden is on the party seeking disqualification of the prosecutor to present evidence establishing the existence of disqualifying bias or prejudice. The determination whether the evidence supports a finding of a conflict of interest is a matter committed to the sound discretion of the trial court.
>
> Powell v. Commonwealth, 267 Va. 107, 138, 590 S.E.2d 537, 556 cert. denied, 125 S. Ct. 86 (2004).

Case 7:06-cv-00611-GEC-mfu   Document 21   Filed 06/12/07   Page 2 of 40   Pageid#: 569

In Lux v. Commonwealth, 24 Va. App. 561, 484 S.E.2d 145 (1997), we held that the Commonwealth's Attorney was disqualified from prosecuting the defendant because there was insufficient evidence of effective screening of contacts between an Assistant Commonwealth's Attorney who had formerly been the defendant's counsel and other attorneys in the Commonwealth's Attorney's Office who were working on the defendant's case. There, we noted the following:

The issue generally arises in at least two situations:

> [t]he first is where the prosecutor has had some attorney-client relationship with the parties involved whereby he obtained privileged information that may be adverse to the defendant's interest in regard to the pending criminal charges. . . . A second [situation] is where the prosecutor has some direct personal interest arising from animosity, a financial interest, kinship, or close friendship such that his objectivity and impartiality are called into question.

Id. at 569, 484 S.E.2d at 149 (citation omitted).

When the police arrested [petitioner], Arthur Goff, a part-time Assistant Commonwealth's Attorney, was representing [petitioner] in an adversary proceeding in [petitioner's] bankruptcy case. Six months earlier, Goff represented [petitioner] in a custody proceeding involving the child and her brother. Goff testified the custody proceeding was not contested and the biological mother agreed to a consent order giving [petitioner] custody of the children. After [petitioner] was arrested, he had a police officer call Goff. [Petitioner] explained the criminal charges to Goff. Goff testified he informed [petitioner] that he was a part-time prosecutor, that he could not talk to him about the charges, and that [petitioner] needed a good defense attorney. He gave [petitioner] the names of two attorneys, and he told [petitioner] not to talk to the police.

Goff testified he never discussed [petitioner's] civil cases or the merits of the criminal charges with the Commonwealth's Attorney. He also testified he wrote a letter to the Commonwealth's Attorney immediately after [petitioner] was arrested, disclosing that he had represented [petitioner] in civil matters and that [petitioner's] bankruptcy case was pending. Goff testified he did not have any access to the office's file for the criminal charges.

In denying [petitioner's] request to disqualify the Office of the Commonwealth's Attorney, the trial judge found that Goff's statements to [petitioner] to remain silent and to get a good defense attorney were "common sense" and were not a reason to disqualify the office. The trial judge also found that Goff

3

had no information from [petitioner] about the child other than the mere fact she was not his child, which was not a disputed fact. The trial judge found that the custody matters involving the child and [petitioner's] other children did not involve any alleged inappropriate conduct. The trial judge further found that Goff was "insulated" from the criminal case and had not worked on the case.

Accordingly, the Court of Appeals determined that the trial judged had not abused his discretion in denying petitioner's request to disqualify the Office of the Commonwealth's Attorney.

Regarding petitioner's contention that the trial judge had no authority to appoint an attorney to represent the child after she initially testified that petitioner had not sexually abused her, the Court of Appeals observed the following facts:

> The child, who was fourteen years old at the time of trial, testified on direct examination that [petitioner] had not sexually abused her. This testimony was inconsistent with statements she gave to investigators and was inconsistent with testimony she gave at the preliminary hearing. The child also testified that [petitioner] contacted her on a cell phone after his arrest and wrote her numerous letters. The letters told her "to make up a story, so that [petitioner] doesn't get in trouble."

> The trial judge interrupted direct examination and informed the child she could be subject to a charge of perjury if she lied under oath. After the child asked, "What's perjury?" the trial judge explained the meaning of perjury and told her she could be "incarcerated" for a substantial period of time if convicted of perjury. The child asked, "What's incarceration?" The child then testified that a nurse collected samples from her at the hospital. [Petitioner] did not cross examine the child. Both sides reserved the right to recall the child as a witness.

> After the child's foster care social worker testified, the prosecutor requested that the judge appoint an attorney to advise the child about the crime of perjury. The trial judge found that the child did not have a "real grasp" of the possible criminal consequences and appointed the guardian ad litem, who [had been] appointed after the child entered foster care, to represent the child. After a lunch recess, the child was recalled as a witness for the Commonwealth and testified to the numerous incidents of sexual contact with [petitioner].

4

The Court of Appeals found that "[t]he record does not establish an abuse of discretion." Quoting Norfolk Div. of Soc. Serv. V. Unknown Father, 2 Va. App. 420, 425 (1986) (parallel citation omitted), the Court stated:

> The duties of a guardian ad litem cannot be specifically spelled out as a general rule, but the underlying criteria are stated in Code [of Virginia] § 8.01-9: "Every guardian ad litem shall faithfully represent the estate or other interest of the person under a disability for whom he is appointed, and it shall be the duty of the court to see that the interest of such defendant is so represented and protected."

The Court of Appeals remarked that "[t]he guardian ad litem told the trial judge that he was 'still, technically, her guardian ad litem,'" and that the trial judge, "[r]ecognizing that the child did not have an understanding of the possible consequences of her testimony," instructed the guardian ad litem to meet with the child. Accordingly, the Court determined that, "[b]ased upon the unique circumstances of this case, the record does not establish that the trial judge erred in permitting the guardian ad litem to advise the child during [petitioner's] trial."

Turning to petitioner's contention that the trial court erred in allowing the prosecutor to re-call the recanting victim, the Court of Appeals stated:

> "A trial court has discretion to decide whether a witness who violates an exclusion order should be prevented from testifying. Factors to be considered include whether prejudice will result to the defendant and whether the violation of the rule resulted from intentional impropriety." Jury v. Commonwealth, 10 Va. App. 718, 721, 395 S.E.2d 213, 215 (1990).
>
> Assuming without deciding that the child violated the exclusion order when she talked to her guardian ad litem prior to recanting her testimony, the trial judge did not abuse his discretion in permitting the child to testify. At the end of the child's initial testimony, both the Commonwealth and appellant reserved the right to recall her as a witness. No evidence established that the violation of the exclusion rule, if any, was the result of any intentional impropriety.

Regarding petitioner's contention that placing a "bailiff between [petitioner] and the child during [the child's] testimony . . . was prejudicial because the bailiff appeared to be guarding

5

[petitioner] and because the jury was never admonished to disregard the restraint," the court observed that

> [t]he trial judge was aware that [petitioner] sent seventeen letters to the child after he was ordered not to have any contact with her. The letters encouraged her to testify falsely, to answer his lawyer's questions but to say she "made it up" in response to the questions by the Commonwealth's Attorney. After reviewing two of the letters, the judge found "an enormously overbearing attempt by the [petitioner] to override the will of [the child], and to coach her in how to testify and what to say." The trial judge positioned a bailiff between the child and [petitioner] during her testimony to prohibit eye contact or gestures between [petitioner] and the child. The record indicates the bailiff did not totally obscure [petitioner's] view of the child. [Petitioner's] counsel did not object to the bailiff standing between [petitioner] and the child, but wanted the bailiff to face the child.

Quoting <u>Via v. Commonwealth</u>, 42 Va. App. 164, 181 (2004) (citations omitted), the Court further observed that "'Virginia courts have consistently held that "[t]he conduct of a trial is committed to the sound discretion of the trial court,"'" and found that,

> [i]n view of the evidence in this record, the trial [court] did not abuse its discretion in placing a bailiff between appellant and the child while she testified. Police procedure required the bailiff to face [petitioner] for security reasons. Moreover, the procedure was an appropriate response to [petitioner's] letters to the child, which were sent after he was ordered not to have any contact with her and which showed he encouraged and coached her to testify falsely.
>
> Although [petitioner] argues the trial judge never admonished the jury to disregard the restraint, appellant never requested an admonishment. Rule 5A:18, therefore, bars our consideration of this argument on appeal. . . . Moreover, the record does not reflect any reason to invoke the good cause or ends of justice exceptions to Rule 5A:18.

(Citations omitted.)

Regarding petitioner's contention that the trial court lacked jurisdiction to conduct his trial because it had failed to arraign him, the Court of Appeals found that the trial court did not err in denying petitioner's motion for a mistrial on that basis. The Court stated, in pertinent part:

6

On the first day of [petitioner's] trial, the judge ruled on pretrial motions and amended an indictment, but did not arraign [petitioner] prior to <u>voir dire</u> of the jury panel. On the second day of [petitioner's] trial, after reviewing the file, the trial judge said "technically, we have arraigned, and we have called upon him to plead, at least one, if not two times, previously." The trial judge also said [petitioner] "was dissatisfied with himself, dissatisfied with this and that, and did not understand" and he never actually entered a plea to the charges at the prior arraignments. The trial judge said he wanted "to make certain that the record is clear that [petitioner] has pled not guilty to all of the charges against him." Defense counsel objected, moved for a mistrial, but was unable to "articulate a prejudice that would accrue to" [petitioner]. The trial judge re-arraigned [petitioner], and [petitioner] entered not guilty pleas to each of the charges.

"In Virginia, upon the trial of any felony, there must be a plea by the defendant." <u>Crutchfield v. Commonwealth</u>, 187 Va. 291, 296, 46 S.E.2d 340, 342 (1948). Code § 19.2-254 provides: "Arraignment shall be conducted in open court. It shall consist of reading to the accused the charge on which he will be tried and calling on him to plead thereto. In a felony case, arraignment is not necessary when waived by the accused."

**Although a defendant is normally arraigned and enters pleas prior to trial, there is nothing in Code § 19.2-254 requiring this.** On the second day of [petitioner's] trial, the trial judge stated that [petitioner] had been arraigned on the charges, but had failed to enter pleas for the charges due to [petitioner's] "dissatisfaction." The trial judge then re-arraigned [petitioner], and [petitioner] entered not guilty pleas to the charges. Defense counsel conceded that [petitioner] was not prejudiced by this procedure. The trial judge had jurisdiction and did not err in denying [petitioner's] motion for a mistrial.

(Emphasis added.)

Regarding petitioner's contention that the trial judge abandoned his judicial role and violated petitioner's due process rights by questioning him, and that the trial judge's questions influenced the jury, the Court quoted <u>Mazer v. Commonwealth</u>, 142 Va. 649, 655 (1925) (citation and parallel citation omitted):

[A] trial judge [may] ask questions of a witness either on his examination in chief or on cross examination. The practice is common and perfectly permissible. Indeed, there are times when it is his duty to do so. He is not to sit there and see a failure of justice on account of omissions to prove facts plainly within the knowledge of a witness, but the character of his questions should not be such as to disclose bias on

7

his part, or to discredit the truthfulness of the witness. . . . "For the purpose of eliciting evidence which has not otherwise been brought out, it is proper for the judge to put the questions to a witness either on his examination in chief or on his cross-examination, and where anything material has been omitted, it is sometimes his duty to examine a witness."

Applying that precedent, the Court of Appeals found the following:

On direct examination [petitioner] testified that the seventeen letters he sent to the child were not written to manipulate her, but to help her understand how she could help expose the truth. After cross-examination, the trial judge asked [petitioner] to look at certain statements in two of the letters and asked how the statements were designed to elicit the truth from the child. [Petitioner] explained how the statements were designed to elicit the truth.

The questions by the trial judge were to elicit the reason appellant gave for writing the letters to the child and did not disclose a bias on the trial judge's part or discredit the truthfulness of [petitioner's] testimony. In addition to questioning [petitioner], the trial judge also questioned [petitioner's] friend and a forensic expert during the Commonwealth's case-in-chief. The record does not establish that the trial judge abandoned his judicial role and violated [petitioner's] due process right when he was questioned by [the trial judge].

Addressing petitioner's argument that the evidence was insufficient to support the convictions, and reviewing "the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom," Archer v. Commonwealth, 26 Va. App. 1, 11 (1997) (citation and parallel citation omitted), the Court found:

[T]he evidence proved that the child testified she moved with [petitioner] to a residence around her thirteenth birthday. Although she initially denied that [petitioner] sexually abused her, she was recalled as witness and testified he did sexually abuse her. The child explained the sexual contact with [petitioner] that occurred at the residence where she lived when she was twelve years old and at the residence where she lived when she was thirteen years old. The last sexual contact was the day before she was removed from [petitioner's] residence.

Seventeen letters [petitioner] sent to the child were admitted into evidence. In the letters, [petitioner] disclosed he had sexual contact with the child. The evidence proved a nurse examined the child and she sent an internal vaginal-cervical swab and external swabs to a laboratory. An expert testified that spermatozoa were on the internal swab and that [petitioner] could not be eliminated as a possible

8

contributor of the spermatozoa. The expert gave the statistical probabilities that the sample from the internal swab contained the DNA of [petitioner] and of the child.

[Petitioner] denied sexually abusing the child and testified he never had any sexual contact with her. He argues the child's testimony was inconsistent and not credible, and was insufficient to prove her age.

"The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998). The jury heard the testimony of the witnesses, including the child's conflicting testimony, and evaluated all the evidence, including [petitioner's] letters and his testimony. The jury necessarily determined that the [petitioner's] testimony was not credible. The jury also determined that the evidence proved the child's age to support the carnal knowledge charges and her age to support the rape and forcible sodomy charges. The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt the child's age and that [petitioner] was guilty of eight counts of carnal knowledge, twelve counts of rape and two counts of forcible sodomy.

Petitioner contended that the trial judge erred in failing to suppress his statement to the investigating officers and by failing to continue the case, arguing that he should have been granted a continuance to prepare for the evidence of his statement, a videotape of which was provided the day before his trial. The Court stated:

A transcript of [petitioner's] statement to the investigating officers was given to him months prior to his trial pursuant to a discovery order. Two days before the trial the Commonwealth's Attorney discovered the existence of the tape. The Commonwealth's Attorney immediately called defense counsel.

On the day of the trial, defense counsel asserted that [petitioner] invoked his right to counsel at a certain time during the interview. The trial judge ruled that [petitioner's] statements on the videotape after he asked about a lawyer were not admissible. After the trial judge suppressed a portion of [petitioner's] statement, defense counsel was concerned about cross-examining one of the investigating officers because he believed the officer's notes were inconsistent with [petitioner's] statement. The trial judge admitted into evidence the portion of the videotape up to the point where [petitioner] asked about an attorney, which defense counsel wanted

9

admitted. Defense counsel and the Commonwealth's Attorney reviewed the videotape and agreed to the edited videotape that was admitted into evidence.

Defense counsel's request for a continuance was made to enable him to file a motion to suppress due to [petitioner's] invocation of his right to counsel. However, after the trial judge ruled that the portion of the videotape was not admissible, defense counsel agreed to the admission of an edited videotape of [petitioner's] statement.

"The defendant, having agreed upon the action taken by the trial court, should not be allowed to assume an inconsistent position." Manns v. Commonwealth, 13 Va. App. 677, 679, 414 S.E.2d 613, 615 (1992) (citation omitted). The trial judge did not err in admitting into evidence the edited videotape of [petitioner's] statement to the investigating officers.

The decision embodied in the per curiam opinion and order was adopted by a three-judge panel of the Court of Appeals of Virginia on March 15, 2005. Miller then filed a petition for appeal in the Supreme Court of Virginia. By order entered July 26, 2005, the Court refused Miller's petition for appeal, and by order entered September 23, 2005, the Court refused his petition for rehearing.

On November 3, 2005, Miller filed a petition for writ of habeas corpus in the Circuit Court of Page County. The petition included the following nineteen claims:

a)      He was denied the use of his "paid lawyer" at his preliminary hearing.

b)      His attorney did not contact and interview his witnesses.

c)      His attorney did not investigate the case.

d)      His attorney did not move to suppress letters seized in the jail or letters the victim turned over to the prosecutor.

e)      His attorney did not request independent DNA analysis.

f)      The trial court appointed a lawyer to the recanting victim.

g)      The recanting victim was allowed to retake the stand after a witness rule was imposed.

h)      The trial court placed a bailiff between Miller and the victim.

10

i)     He was not arraigned prior to trial.

j)     The trial court cross-examined him.

k)     The trial court did not exclude all videotaped statements.

l)     The evidence adduced at trial was insufficient to sustain his convictions.

m)    The prosecutor should have been disqualified.

n)     Juror misconduct.

o)     His attorney failed to object to the prosecutor's closing argument.

p)     His attorney failed to discuss the jury instructions with him.

q)     The Court of Appeals wrote false statements in its decision.

r)     The trial judge denied his attorney's motion to withdraw; and

s)     He was not arraigned at the start of trial.

By order entered January 31, 2006, the Circuit Court of Page County denied the petition and granted respondent's motion to dismiss. The Court held that "[p]etitioner's claims a, f, g, h, i, j, k, m, n, q and r fail to allege the requisite prejudice." Regarding claim a, alleging that petitioner was denied the use of a retained attorney at his preliminary hearing, the Court found that petitioner "did not show how [another attorney's] representation at the preliminary hearing prejudiced petitioner." Moreover, the Court observed that

> a review of the general district court paperwork reveals that the petitioner's "paid lawyer" returned petitioner's funds long before the August 25, 2003, preliminary hearing. A warrant for carnal knowledge was issued for petitioner on March 12, 2003. Petitioner first appeared on March 18, 2003. The case was carried over to April 15, 2003, when petitioner requested a court appointed lawyer. On that same date, four more felony warrants were executed for petitioner. All the charges were carried over to July 8, 2003. Petitioner's Exhibit 1, a check from David Downes, is dated May 14, 2003. Therefore, in light of the fact that the preliminary hearing was first scheduled for July 8, 2003, and Mr. Downes presumably returned petitioner's retainer a month prior, petitioner is unable to show that he was not represented by

11

Mr. Downes due to any action by the general district court. To the contrary, Mr. Downes indicated to the circuit court that he had a conflict because he had represented petitioner's wife in her divorce from petitioner. Therefore, it is impossible for petitioner to show prejudice insofar as Mr. Downes declined to represent petitioner, and returned petitioner's money, due to a conflict of interest unrelated to the preliminary hearing.

The Court found that claim f, alleging that the trial court had erred by appointing the victim's guardian ad litem to counsel her, "is replete with hearsay and makes no valid claim." The Court remarked that the trial judge had "appointed the guardian to counsel the victim regarding perjury; the guardian spoke with the victim and then [the] victim . . . testified in accordance with her preliminary hearing testimony." In the Court's view, the petitioner's "conclusory allegation that the guardian told the victim what to say" was "invalid" and was "unable to show prejudice." The Court similarly dispensed with claim g, because petitioner "is unable to show that the guardian coached the victim on how to testify before she was recalled" and because "[a]llowing a witness to retake the stand is within the sound discretion of the trial court." (Citations omitted.) In the Court's view, petitioner "proffered nothing more than hearsay to support his claim that the victim was told what to say" and, "[i]n light of the fact that her testimony was consistent with her preliminary hearing testimony, the petitioner has shown no abuse of discretion by the trial court and therefore, no prejudice." The Court likewise found that claim h, stating that the trial court erred in placing a bailiff between petitioner and the victim, "alleges no prejudice." The Court observed that "[c]onduct of a trial is within the discretion of the trial court," (citation omitted) and added:

> In light of the fact that the jury heard evidence that the petitioner had written the victim numerous letters discussing their sexual encounters; the petitioner admitted writing the letters; and the petitioner's DNA was found inside the victim, it is impossible for the petitioner to show that he was prejudiced by the fact that a bailiff stood between petitioner and the victim, and that event alone influenced the outcome of the trial.

12

Regarding claim j, alleging that the trial court erred in questioning petitioner, the Court stated, citing Mazer, supra, that "[i]t is a longstanding rule of law that not only is a trial judge entitled to question witnesses, it is often proper for a judge to do so." Furthermore, the Court observed that the trial judge

> allowed trial counsel to redirect petitioner after questioning, and counsel declined to do so. Petitioner makes no valid allegation and proffers nothing in support of his claim that the trial court's questioning was prejudicial; he states only that the court "influenced the jury that I was guilty." He makes no legitimate claim that can be consider on habeas.

Regarding claim k, alleging that "[t]he trial court did not exclude all evidence of [videotaped] statements," the Court observed that the trial court "did exclude portions of the videotaped statement," and that claim k, therefore, "is meritless." Turning to claim m, alleging that "[t]he prosecutor should have been disqualified," the Court stated:

> The Court conducted a hearing on whether the prosecutor's office should be disqualified due to a member of the office representing the petitioner on civil matters and talking to the petitioner when he was arrested . . . . The Court found that the prosecutor in question had no involvement in the criminal matter and did not work on the case. Moreover, he had no knowledge of the facts of the criminal case as a result of his representation of the petitioner. The attorney testified that there were no sexual misconduct allegations in the custody hearing, and that he had no further conversation with the petitioner after informing petitioner he was a prosecutor. Petitioner has proffered nothing in his habeas petition to show any prejudice as a result of the prosecutor's past representation of the petitioner; he has made no showing that the prosecutor had any involvement, however slight, in the criminal matter. Claim m makes no valid habeas claim, nor does petitioner allege any prejudice as a result of this claim.

The Court found that claim n, alleging juror misconduct, "makes no valid allegation. As with petitioner's other claims, this allegation is replete with hearsay." The Court observed that

> [d]uring voir dire, no member of the jury panel indicated that they knew the petitioner. Petitioner again proffers nothing in support of his conclusory statements that the jury was "influenced" against him. Although he claims that his attorney

13

should have asked more questions, he does not suggest what those questions are or how asking them would have changed the trial's outcome.

The Court determined that claim q, alleging that the Court of Appeals "wrote false statements in the appeal decision," was "completely baseless." The Court stated:

> Petitioner claims that the Court [of Appeals] stated that the trial judge questioned petitioner's witnesses; the Court [of Appeals] actually stated that "the trial judge also questioned [petitioner's] friend and a forensic expert during the Commonwealth's case in chief." Per curiam order dated December 8, 2004, p. 7 (emphasis added). Petitioner makes no cognizable claim for habeas relief in claim q.

The Court characterized claim r, alleging that the trial court denied petitioner's motion to withdraw, as a "false" and "baseless allegation," pointing out that "Mr. Hudson was allowed to withdraw on November 19, 2003, and A. Gene Hart was appointed." The Court determined that "claim l is an appellate issue and, therefore, not cognizable on habeas review." And, regarding claims i and s, the Court found that they "have no merit," inasmuch as they "consist solely of the statement that he was not arraigned at the start of his trial" and "allege no prejudice whatsoever from the timing of his arraignment." The Court stated, in pertinent part:

> Petitioner was arraigned on the second day of the jury trial, before closing arguments. The trial court denied petitioner's motion for a mistrial because no prejudice had accrued to petitioner. The court noted that the petitioner had been called upon to plead on at least two prior occasions, but in both of [those] instances the court was directed to petitioner's dissatisfaction with other things. In one instance, petitioner had been presented with a plea agreement and was close to pleading guilty. Virginia Code § 19.2-254 provides that arraignment shall be done in open court, and the defendant shall enter a plea of guilty, not guilty or nolo contendere. No violation of the law occurred insofar as the petitioner was arraigned in open court and entered pleas of not guilty to all the charges. The petitioner was arraigned before the case was given to the jury for deliberations. Petitioner has alleged no prejudice whatsoever from the timing of his arraignment; his claims consist solely of the statement that he was not arraigned at the start of his trial.

Regarding petitioner's allegations of ineffective assistance of counsel in claims b, c, d, e, o, and p, the Court held that petitioner could not meet the highly demanding standard set forth in

14

Strickland v. Washington, 466 U.S. 668 (1984) because "[p]etitioner has shown no prejudice as a result of the alleged ineffective assistance of counsel." Addressing claims b and c, alleging that counsel failed to contact petitioner's witnesses and failed to investigate the case, the Court found that the claims "cannot be sustained because he has proffered nothing to this Court to support his conclusory statement that witnesses existed to refute the Commonwealth's evidence against him" and that petitioner "offer[ed] no explanation of what the witnesses would have said." (Citation omitted.) The Court continued:

> Petitioner's first attorney, Mr. Hudson, indicates that he was never given any names of witnesses by petitioner. It is incredible that petitioner would not give his first attorney, who represented him from before the preliminary hearing until he was allowed to withdraw in November of 2004, witnesses and then provide thirty-three potential witnesses to newly appointed counsel. Moreover, petitioner does not proffer the names of these mystery witnesses, although he claims to have given a list of their names, phone numbers, addresses, and explanation of their testimony to his counsel. Instead, he has provided this Court only a generalized summary that unnamed witnesses existed and alleged that they would testify to the victim's past, that she has confessed to lying, how the DNA "was involved" and that the petitioner had had problems with the victim. Much of what the petitioner alleges his witnesses would have testified to is inadmissible hearsay. Because he has not provided names of witness[es] nor specific testimony from them, he is unable to show prejudice even if he could prove that he, in fact, provided his attorney with their identifying information. The affidavits he does attach . . . are completely irrelevant and devoid of pertinent information. None of the affiants indicate what their testimony would have been, or how it would have overcome the overwhelming evidence against the petitioner and changed the trial's outcome.

The Court characterized as "meritless" petitioner's claim d, alleging that petitioner's attorney did not move to suppress letters seized in the jail or letters that the victim turned over to the prosecutor. The Court stated that

> [i]nvestigators did, in fact, have a search warrant for letters sent to the victim. The victim had taken the letters to a friend's home; the friend's father allowed Investigator Hilliard into the home to retrieve the lettes [sic]. Counsel had no basis upon which to file a motion to suppress the letters from the petitioner to the victim.

15

Likewise, there was no basis to suppress any letters seized in the jail, as they were not seized in violation of any of the petitioner's rights.

(Citation omitted.)

Regarding claim e, alleging that petitioner's attorney failed to request independent DNA analysis, the Court found that the claim "makes no showing of prejudice, as petitioner has not proffered what an independent DNA 'test' would show." The Court added:

> The petitioner's DNA was found <u>inside</u> the victim. Therefore, although a PERK ["Physical Evidence Recovery Kit"] was performed on petitioner, it was not analyzed because there was no need. Regardless of what petitioner's PERK showed, it would not negate the fact that the petitioner's DNA was isolated on a sample from the victim's vaginal-cervical swab.

Considering claim o, which alleged that the prosecution's closing arguments wrongly discussed the petitioner's criminal history when, in rebuttal, the prosecutor stated that the jury was entitled to consider petitioner's criminal record in weighing his testimony, the Court found that petitioner could allege no prejudice, given that "[t]his is an accurate statement of the law; counsel had no basis to object." And, turning to claim p, alleging ineffective assistance because counsel failed to discuss jury instructions with petitioner, the Court stated that "Petitioner has made no showing of prejudice from counsel's failure to discuss instructions with petitioner. Petitioner must show that a failure to communicate caused a defect in counsel's performance." (Citations omitted.)

The Court, "having reviewed the entire record and determining that petitioner's allegations of illegal detention can be fully determined on the basis of the record pursuant to Virginia Code § 8.01-654(B)(4)," concluded that "[e]ach claim is meritless," stating:

> Petitioner has failed to show prejudice from any allegation he makes. The evidence against him included a DNA report that indicated that the DNA mixture found inside the victim's vagina was 1.1 quadrillion times more likely to come from the petitioner and the victim than from the victim and another Caucasian male. The Commonwealth introduced letters from the petitioner to the victim that discussed

16

how he loved that the victim's jeans showed off her "sexy butt" and he loved to rub her butt. He wrote how much he missed sex with the victim. He told the victim that she was the only "woman" he had sex with since she came into his life. The petitioner admitted writing the letters. Petitioner has made no claim, nor proffered any evidence to this Court, that would even suggest a defense, a witness, or a trial strategy that could have overcome the evidence against him.

The Supreme Court of Virginia denied petitioner's subsequent appeal on August 17, 2006, and denied his "request for reconsideration" on July 12, 2006.

Miller executed the instant petition on October 5, 2006. The petition includes the following twenty-five claims:

1.  The state <u>habeas</u> court violated his rights by failing to make findings of fact or conclusions of law in its Order dismissing his petition.

2.  The state <u>habeas</u> court violated his rights by failing to conduct an adequate investigation into his claims and by failing to hold an evidentiary hearing.

3.  He was denied the use of his retained attorney at his preliminary hearing.

4.  His attorneys were ineffective for failing to interview and call 33 potential witnesses.

5.  His attorneys were ineffective for failing to investigate his case and prepare a proper defense.

6.  His trial attorney was ineffective for failing to move to suppress letters petitioner wrote to the victim.

7.  His trial attorney was ineffective for failing to request an independent analysis of items from the Physical Evidence Recovery Kit ("PERK").

8.  The trial court violated his rights by appointing an attorney to represent the recanting victim/witness.

9.  The trial court violated his rights by allowing the recanting victim/witness to retake the stand.

10. The trial court violated his rights by placing a bailiff between him and the victim during her testimony.

17

11. The trial court violated his rights by failing to arraign him until the second day of trial.

12. The trial court violated his rights by cross-examining him.

13. His right to due process was violated by the prosecutor's failure to comply with the discovery order.

14. The evidence adduced at trial was insufficient to sustain his convictions.

15. The trial court violated his rights by denying his motion to disqualify the Office of the Commonwealth's Attorney.

16. His trial attorney was ineffective for failing to adequately question potential jurors during voir dire and for failing to inform the court of alleged juror misconduct.

17. His trial attorney was ineffective for failing to object to the prosecutor's closing argument.

18. His trial attorney was ineffective for failing to consult with him regarding jury instructions.

19. The Court of Appeals violated his rights by misstating the facts in its Order denying his appeal.

20. The trial court violated his rights by denying his attorney's motion to withdraw.

21. The trial court violated his rights by failing to arraign him at the start of the trial.

22. The state habeas court violated his rights by failing to investigate his claims.

23. The Virginia Supreme Court violated his rights by denying his petition for appeal on habeas without investigating his claims or conducting an evidentiary hearing.

24. The Virginia Supreme Court violated his rights by denying his motion to amend his appeal on habeas.

25. The Virginia Supreme Court erred in denying his petition for appeal on habeas.

The respondent moved to dismiss Miller's petition on January 4, 2007. Miller has filed a response, and the petition is now ripe for disposition. The court will include additional facts in its analysis as necessary.

18

## ANALYSIS

### Standard of Review

Pursuant to 28 U.S.C. § 2254(b), a petitioner challenging a state court conviction must first exhaust remedies available in the courts of the state in which he was convicted before seeking federal habeas review. See Preiser v. Rodriguez, 411 U.S. 475 (1973). When a claim has been adjudicated on the merits by a state court, this court may grant habeas relief only if the state court's adjudication of the claims "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d). The United States Supreme Court has explained that this statute "plainly sought to ensure a level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." Williams v. Taylor, 529 U.S. 362, 386 (2000) (internal citations omitted). In determining the reasonableness of a state court's application of federal law, "federal courts are to review the result that the state court reached, not 'whether [its decision] [was] well-reasoned.'" Robinson v. Polk, 438 F.3d 350, 358 (4th Cir. 2006) (citations omitted). Additionally, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e); Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir. 2003). Consequently, "state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." Williams, 529 U.S. at 389.

19

## Non-Cognizable Claims – Claims 1, 2, 22, 23, 24, and 25[2]

Claims 1, 2, 22, 23, and 25 contend that the state habeas courts violated petitioner's due process rights and Virginia law by dismissing his habeas petition without reading it, investigating the claims raised therein, or holding an evidentiary hearing. Claim 24 asserts that the Virginia Supreme Court erred in denying petitioner's motion to amend his state habeas appeal. Claims 1 and 2 further contend that the state habeas court violated Virginia law by dismissing petitioner's habeas petition without making findings of fact and conclusions of law.

In the first instance, the Circuit Court of Page County did make findings of fact and conclusions of law in its final order, as demonstrated in the preceding factual and procedural summary, and in accordance with Va. Code § 8.01-654(B)(5) (requiring findings of fact and conclusions of law in order disposing of habeas claims). Moreover, petitioner's scattershot claims of errors in the state habeas proceedings are not cognizable in this court. See Wright v. Angelone, 151 F.3d 151, 159 (4th Cir. 1998) ("we agree with the district court that this claim, a challenge to Virginia's state habeas corpus proceedings, cannot provide a basis for federal habeas relief") (citing Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988) (holding that errors and irregularities in connection with state post-conviction proceedings are not cognizable on federal habeas review)). Accordingly, claims 1, 2, 22, 23, 24, and 25 will be dismissed.

## Procedural Default – Claims 8 and 9[3]

Prior to filing a petition under 28 U.S.C. § 2254, a habeas petitioner must first exhaust all remedies in state court. See 28 U.S.C. § 2254(b)(1)(A). The petitioner bears the burden of proving

---

[2] Petitioner's claims overlap substantively. The court has grouped the claims by substantive category.

[3] As will be explained more fully in a separate section, certain portions of claims 3 and 10 are also procedurally defaulted.

20

exhaustion. See Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998). The purpose of the exhaustion doctrine is to give "state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." O'Sullivan v. Boerckel, 526 U.S. 838, 846 (1999). A § 2254 claim has not been "fairly presented" for exhaustion purposes if the petitioner relied on different facts or a different rule of law in state proceedings. See Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court."). Claims that arise under state or federal law are not exhausted if the habeas petitioner failed to assert a federal basis when presenting the claims in state court. Baker v. Corcoran, 220 F.3d 276, 289 (4th Cir. 2000).

Where a petitioner has never fairly presented his claims to the state courts and an adequate and independent state rule would bar review, the claim is procedurally defaulted. See Teague v. Lane, 489 U.S. 288, 298 (1989); Baker, 220 F.3d at 288. A federal court will not review a claim that is procedurally defaulted "absent cause and prejudice or a fundamental miscarriage of justice to excuse the procedural default." See Fisher v. Angelone, 163 F.3d 835, 844 (4th Cir. 1998).

In claim 8, petitioner contends that the trial court erred by appointing the minor victim's guardian ad litem as an attorney for the victim after the victim recanted on the stand and further expressed ignorance of the terms "perjury" and "incarceration." In claim 9, petitioner contends that the trial court erred by allowing the victim to retake the stand and continue to testify after speaking

21

with her attorney. Petitioner contends that, in so doing, the trial court violated his constitutional due process rights.

These claims are procedurally defaulted. Although petitioner raised these claims on direct appeal and in his state habeas petition, this court's review of the record demonstrates that petitioner's claims in those courts were based entirely on state law.[4] In the instant petition, Miller contends for the first time that the appointment of the attorney and permitting the victim to retake the stand constitute violations of his right to due process. Accordingly, petitioner's constitutional claims were not properly presented to the state courts, and he may not assert them now. See Duncan, 513 U.S. at 366; Anderson v. Harless, 459 U.S. 4, 7 (1982); Matthews, 105 F.3d at 911. Petitioner would now be precluded from presenting claims 8 and 9 to the state courts by VA. CODE § 8.01-654(B)(2), which requires a petitioner to include all claims for relief known to the petitioner in the first petition for a writ of habeas corpus. The Fourth Circuit has recognized this successive petition provision as an adequate and independent state law ground for procedural bar purposes. See, e.g., Pope v. Netherland, 113 F.3d 1364, 1372 (4th Cir. 1997); Gray v. Netherland, 99 F.3d 158, 163 (4th Cir. 1996); Bassette v. Thompson, 915 F.2d 932, 937 (4th Cir. 1990). Therefore, claims 8 and 9 are

---

[4] To the extent Miller asserts claims that the appointment of counsel and allowing the victim to retake the stand constitutes error under state law, those claims are not cognizable. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). See also Wright v. Angelone, supra, 151 F.3d 151 at 159; Bryant v. Maryland, supra, 848 F.2d at 493. To the extent petitioner argues that the alleged violations of state law present constitutional issues, a writ may only issue if the alleged errors constituted a fundamental miscarriage of justice. See Hailey v. Dorsey, 580 F.2d 112, 115 (4th Cir. 1978).

The court notes that petitioner has proffered nothing, before this court or below, to support his allegation that the victim's guardian ad litem "influenced her and made her change her testimony." Additionally, the case petitioner cited to support his argument that "[t]he trial court erred by letting the alleged victim retake the witness stand after a witness rule was imposed," Brickhouse v. Commonwealth, 208 Va. 533, 537 (1968), actually refutes his contention. In Brickhouse, the Supreme Court of Virginia held that "it is within the sound discretion of the trial court to permit the testimony of a witness who has violated an order directing his exclusion from the courtroom." Id.; see also Jury v. Commonwealth, 10 Va. App. at 721.

procedurally defaulted and may not be reviewed by this court absent a showing of cause and prejudice or actual innocence. See Roach v. Angelone, 176 F.3d 210, 221 (4th Cir. 1999).

To establish cause for the procedural default, a petitioner must demonstrate that some "objective factor" external to his defense impeded him from complying with the state's procedural rule. Murray v. Carrier, 477 U.S. 478, 488 (1986). In order to use an actual innocence claim as a procedural gateway to assert an otherwise defaulted claim, "a petitioner must offer 'new reliable evidence . . . that was not presented at trial,'" and "'the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" Royal v. Taylor, 188 F.3d 239, 244 (4th Cir. 1999) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)).

Applying these principles, the court concludes that Miller has failed to establish cause and prejudice or actual innocence to excuse his procedural default. First, Miller has failed to proffer any evidence to establish that any objective factor, external to his own defense, prevented him from raising his constitutional claim in the state direct appeal and habeas courts. Likewise, Miller has failed to proffer sufficient evidence to establish an actual innocence claim under Schlup. Consequently, petitioner's claims of due process violations in claims 8 and 9 must be dismissed as procedurally barred.[5]

---

[5] The court notes that, even were it to consider petitioner's due process claim, petitioner would fail. As mentioned in the preceding standard of review, when a state court has rendered a decision on the merits, habeas relief is appropriate only if the state court's decision was contrary to federal law or was clearly contrary to the facts presented during the proceeding. See 28 U.S.C. § 2254(d)(1-2). A state court decision is contrary to federal law when it contradicts precedent set by the Supreme Court of the United States as to a question of law or if the state court confronts facts which are materially indistinguishable from a relevant Supreme Court precedent but arrive at an opposite result than the Supreme Court. Williams, 529 U.S. at 405. Additionally, a state court makes an unreasonable application of law if it unreasonably applies the correct rule to the facts presented or unreasonably extends or refuses to extend a particular legal principle. Id. at 406. However, a presumption of correctness attaches to state court factual findings. 28 U.S.C. § 2254 (e)(1). As such, the petitioner bears the burden of rebutting this presumption. Id. Petitioner has failed to rebut this presumption of correctness; furthermore, the record does not indicate that the state courts' decisions in petitioner's case are contrary to federal law.

23

## Sufficiency of the Evidence – Claim 14

Claim 14 asserts that "[t]he evidence adduced at trial was insufficient to sustain his convictions." Petitioner raised this claim on direct appeal before the Court of Appeals of Virginia.

The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the right to a fair trial and requires the prosecution to prove each element of the crime beyond a reasonable doubt. On review of a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Conflicting inferences presented by the facts are presumed to have been resolved in favor of the prosecution "even if it does not affirmatively appear in the record." Id. at 326. In determining whether the Court of Appeals of Virginia reasonably applied these principles, this court must determine whether the decision is minimally consistent with the record. Wiggins v. Corcoran, 288 F.3d 629, 637 (4th Cir. 2002) (citing Bell v. Jarvis, 236 F.3d 149, 159 (4th Cir. 2000)).

As indicated in the factual and procedural summary, above, the Court of Appeals's review of the evidence adduced at petitioner's trial established that the victim testified that petitioner sexually abused her, that the sexual contact occurred when she was twelve and thirteen years old, and that "[t]he last sexual contact was the day before she was removed from [petitioner's] residence." Letters petitioner sent to the victim after his arrest and the issuance of an order prohibiting him from contacting her were admitted into evidence; in these letters, petitioner "disclosed he had sexual contact with the child." An expert testified that a sample recovered from an internal vaginal-cervical swab included spermatozoa, that petitioner "could not be eliminated as a possible contributor of the spermatozoa," and that the DNA recovered from the internal swab was

1.1 quadrillion times more likely to come from the petitioner and the victim than from the victim and another Caucasian male.

The Court of Appeals of Virginia found that the Commonwealth's evidence was sufficient to prove beyond a reasonable doubt that petitioner was guilty of carnal knowledge, rape, and forcible sodomy. The Court reasonably applied the proper standard of review under Jackson, and its ruling, which is consistent with the evidence contained in the record, is entitled to deference under § 2254. Accordingly, this claim will be dismissed.

### Trial Error – Claims 3; 10; 11 and 21; 12; 13; 15; and 20

### Claim 3

Petitioner contends that his due process and Sixth Amendment rights were violated when the trial court denied him the use of his "retained attorney," David Downes, at his preliminary hearing, in violation of VA. CODE § 19.2-159.1.[6] Thereafter, petitioner was forced to proceed at the preliminary hearing with his court-appointed attorney, Webb Hudson, whom petitioner disliked.

Although petitioner raised this claim in his state habeas petition, he alleged only that the error violated his Sixth Amendment right to counsel and VA. CODE § 19.2-159.1. Petitioner's instant due process claim was not "fairly presented" to the state courts, and could not now be presented; therefore, petitioner's contention that his due process rights were violated when the trial court denied him the use of his "retained attorney" is procedurally defaulted for purposes of federal habeas review.

Petitioner's Sixth Amendment claim was raised in his state habeas petition. The preceding factual and procedural summary indicates that the state court found petitioner's claim insufficient

---

[6] To the extent Miller's claim could be construed as alleging a violation of VA. CODE § 19.2-159.1, this is a state law claim, not cognizable as a habeas claim before this court. See Estelle, 502 U.S. at 67, supra n. 4.

25

to warrant <u>habeas</u> relief. That finding is neither contrary to nor an unreasonable application of federal law.[7] Moreover, assuming <u>arguendo</u> that petitioner's claim presents one of constitutional error, petitioner cannot show that the alleged error had a "substantial and injurious effect or influence." <u>California v. Roy</u>, 519 U.S. 2, 5 (1996) (<u>per curiam</u>) (citing <u>Kotteakos v. United States</u>, 328 U.S. 750, 776 (1946), and <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993)). "Under this standard, <u>habeas</u> petitioners may obtain plenary review of their constitutional claims, but they are not entitled to <u>habeas</u> relief based on trial errors unless they can establish that it resulted in 'actual prejudice.'" <u>Brecht</u>, 507 U.S. at 637 (quoting <u>United States v. Lane</u>, 474 U.S. 438, 449 (1986)).

Here, petitioner fails to allege any "actual prejudice" resulting from the trial court's alleged denial of his request to use his "retained attorney" at his preliminary hearing. Nor can he credibly mount such an allegation. Petitioner pleaded not guilty at his preliminary hearing; thus, he lost no defenses or rights. Moreover, he was subsequently indicted on all 23 charges, thereby obviating whatsoever any need for a preliminary hearing. <u>See</u> <u>Webb v. Commonwealth</u>, 204 Va. 24, 30-31 (1963) ("a preliminary examination of one accused of committing a felony is not necessary where an indictment has been found against him by a grand jury"). Petitioner has not alleged any prejudice stemming from this alleged error. <u>See</u> <u>Roy</u>, 519 U.S. at 5; <u>Brecht</u>, 507 U.S. at 637; <u>see also</u> <u>Coleman v. Alabama</u>, 399 U.S. 1, 10-11 (1970) (denial of counsel at a preliminary hearing in violation of the

---

[7] Moreover, the record demonstrates that petitioner's claim that the trial court denied him "the use of his retained attorney at his preliminary hearing" is factually incorrect. A preliminary hearing was scheduled for May 13, 2003. However, on that date, the prosecutor moved to have petitioner's bond revoked and informed the court that she would be pursuing additional charges against petitioner. The revocation and the new charges stemmed from petitioner's having violated the condition of his bond that he have no contact with the victim and petitioner's attempt to abduct the victim and flee the Commonwealth with her. Mr. Downes appeared at the hearing; however, after the prosecutor informed the judge of the bond violation and the judge indicated that he intended to revoke petitioner's bond, Mr. Downes informed the court that he would be unable to represent petitioner. Mr. Hudson, who had already been appointed to represent petitioner, pursuant to petitioner's Request for Appointment of Counsel, was present at the hearing and continued to represent him. The record does not support petitioner's claim that the judge told him he could not use Mr. Downes "because I said so and that is all you need to know."

26

Sixth Amendment right to counsel susceptible to harmless error review).[8]  Accordingly, this claim will be dismissed.

## Claim 10

Petitioner contends that the trial court erred by placing a bailiff between the victim and petitioner when the victim testified.  In petitioner's view, this prejudiced the jury against him and deprived him of a fair trial.[9]  Petitioner raised this claim on direct appeal and in his habeas petition before the Circuit Court of Page County.  As recounted in the preceding factual and procedural summary, the state habeas court found that petitioner's claim failed to show prejudice and that the claim was therefore insufficient to warrant habeas relief.  This finding is neither contrary to nor an unreasonable application of federal law.

To obtain relief for an alleged constitutional violation, a habeas petitioner must show that the error had a "substantial and injurious effect or influence" amounting to actual prejudice.  Roy, 519 U.S. at 5; Brecht, 507 U.S. at 637; see also Holbrook v. Flynn, 475 U.S. 560, 569 (1986) (deployment of security officers in courtroom not inherently prejudicial).  Given the evidence in the criminal case against petitioner, including his DNA, which was recovered from an internal vaginal-cervical swab of the victim, petitioner cannot meet this burden.  Moreover, the letters petitioner

---

[8] The court notes that the instant case is distinguishable from one where a trial court denies a defendant the use of retained counsel throughout the trial proceedings.  See United States v. Gonzalez-Lopez, 548 U.S. ___, ___, 126 S. Ct. 2557, 2565 (2006).

[9] To the extent the instant petition could be construed to contain a separate claim of trial error because petitioner states that the jury was never instructed to disregard the bailiff's presence, such a claim is defaulted. The Court of Appeals, the last state court to adjudicate this claim in a reasoned opinion, found that the claim is barred pursuant to VA. SUP. CT. R. 5A:18.  Under Virginia law, claims that are not presented at trial generally cannot be presented on direct appeal.  VA. SUP. CT. R. 5A:18; VA. SUP. CT. R. 5:25.  Virginia's procedural rule barring consideration of such claims is an adequate and independent state law ground.  See Clagett v. Angelone, 209 F.3d 370, 378 (4th Cir. 2000) (recognizing Virginia's prohibition of claims not presented at trial as adequate and independent); see also Weeks v. Angelone, 176 F.3d 249, 270 (4th Cir. 1999) (Rule 5:25 is an adequate and independent procedural rule).  Accordingly, this claim may not be considered in the instant petition.

27

wrote to the victim admitting that he had sex with her and instructing her to lie on the stand and falsify evidence on his behalf indicate that the trial court's action was necessitated by petitioner's attempts to influence the victim.[10]  See Illinois v. Allen, 397 U.S. 337, 344 (1970) (even inherently prejudicial act of binding and gagging a disorderly defendant may be permissible when necessitated by defendant's actions).  Accordingly, this claim will be dismissed.

## Claims 11 and 21

Claim 11 contends that the trial court violated petitioner's rights by failing to arraign him until the second day of the trial, and claim 21 contends that the trial court violated his rights by failing to arraign him at the start of the trial.  In petitioner's view, the failure to arraign him prior to trial violated VA. CODE § 19.2-254 (stating arraignment shall be conducted in open court and consist of reading the charges to the defendant and calling on him to enter a plea), which in turn resulted in a violation of VA. CODE § 19.2-264.3 (requiring a bifurcated proceeding in death penalty cases).

---

[10] The court has reviewed the ninety pages that constitute petitioner's letters to the victim.  The letters include the following excerpts not quoted elsewhere in this opinion:

You were the greatest woman I could ever have been in bed with.  I love to cuddle with you.  I miss that so much.  I miss your warm, sexy, soft body next to mine, and I miss the sex that [sic] I could never find a better partner.

* * *

This [cartoon drawing] is how I felt after having sex, making love with you.  You were so good to me, and always made me feel like a man.

* * *

You were the best I could ever have or want, when it comes to sex.  I wish you could come see me.  God, how I love you and need you and miss you and want you so bad.  I wish you could demand to come and see me.  I would like that so much.

* * *

My sweet angel, you have been the only woman that I have slept with, had sex with, made love to, since you came into my life.

28

Petitioner argues that, as a result of this violation of state law, his rights to due process and a fair trial were violated; he maintains that, by the time he was called upon to plead on the second day of trial, the jury already thought he was guilty.

Petitioner raised this claim in his state <u>habeas</u> petition. The state court found petitioner's claim insufficient to warrant <u>habeas</u> relief, in part because he failed to demonstrate prejudice. This finding is neither contrary to nor an unreasonable application of federal law.

Moreover, although petitioner presents this as a constitutional claim, he fails to allege any actual constitutional violation. Nor can a constitutional violation be gleaned from the record.[11, 12] This claim, at best, challenges state law, and is therefore not cognizable in <u>habeas</u>. <u>See</u> <u>supra</u> n. 4, <u>Estelle</u>, 502 U.S. at 67. Accordingly, claims 11 and 21 will be dismissed.

### Claim 12

Petitioner's claim 12 contends that the trial court violated his right to due process. In petitioner's view, the trial court abandoned its judicial role by questioning him after he was cross-examined by the prosecutor. Petitioner raised this claim on direct appeal and again in his state <u>habeas</u> petition. As shown in the factual and procedural summary, above, the state court found the

---

[11] Petitioner was informed of the charges against him on more than one occasion, and well before the trial. Transcripts in the record indicate that the charges were read to petitioner at proceedings on August 5, 2003, November 5, 2003, and November 19, 2003. All of these dates were prior to the commencement of trial on February 4, 2004. Moreover, the charges against petitioner were laid out in a plea agreement, which petitioner signed on November 4, 2003, but which the trial court subsequently declined to approve at proceedings held on November 19, 2003.

[12] The transcript of proceedings on February 5, 2004, the second day of petitioner's trial, indicate that petitioner's plea was taken in open court in the absence of the jury. To the extent petitioner claims that the failure to call on him to plead in front of the jury prior to their consideration of the evidence impermissibly left the jury with the impression he was guilty, this claim is without merit. There is no constitutional right to plead to the jury one's guilt or innocence.

claim insufficient to warrant habeas relief. This finding is neither contrary to nor an unreasonable application of federal law.

In Virginia courts, as in the federal courts, a trial judge has the right, and at times the responsibility, to question witnesses. See Mazer, 142 Va. at 655; United States v. Morrow, 925 F.2d 779, 781 (4th Cir. 1991). A trial judge does not impair a defendant's right to a fair trial merely by questioning witnesses, provided his questions do not usurp the role of the prosecutor or show the jury he believes the accused is guilty. United States v. Godwin, 272 F.3d 659, 677 (4th Cir. 2001).

Petitioner testified on direct examination that the letters he wrote to the victim were not intended to manipulate the victim, but were intended to help her see how she could expose the truth. Petitioner affirmed that, in writing the letters to the victim, he was "trying to help [the victim] understand how she could help" him "[b]y telling the truth about what did and did not happen. . . ." After cross-examination the trial judge asked Miller to look at statements in two of the letters and then asked him how the statements were intended to elicit the truth.[13]

---

[13] The trial judge questioned how the following statements were designed to elicit the truth from the victim: "God, how I wish I could be holding you right now"; "I want to feel your warm, sweet, sexy body"; and "Don't tell your mother anything." The trial judge also questioned petitioner about the following statements:

God, how I wish I could be holding you right now. I want to feel your warm, sweet, sexy body next to mine. I love the way . . . that you look, feel, smell. I want to run my fingers through your beautiful, silky hair. I want the sexy clothes . . . I love the sexy clothes you wore. I love how your jeans would show off your sexy butt. I love to savor and rub your butt.

* * *

I love the way we would cuddle together, and we would fit together so perfect. I miss the tacos you would make. Yes, I loved your brownies. I loved everything about you. You are my perfect, sweet angel. I wish I could be that purple rabbit. Damn, I miss the sex so much. I will never forget how you said it: "a hose in a drainpipe." I love how you said that.

Tell me what happened with you and Ashley. I know I can't use her as a witness, but how much does she know about us? Will she rat us out? I hope not.

30

The trial judge's questions were clearly designed to elicit from petitioner his reasons for writing the letters. They did not disclose any bias or discredit the truthfulness of petitioner's testimony. The trial judge also questioned several of the Commonwealth's witnesses, including Amanda Lee and the forensic expert. Given the evidence against petitioner, the claim that the trial judge's questions improperly influenced the jury is without merit. Accordingly, claim 12 will be dismissed.

## Claim 13

Petitioner's claim 13 contends that the trial court erred in admitting the videotape of his initial interrogation. Petitioner concedes that the portion of the videotape including his invocation of the right to counsel and thereafter, was redacted from the tape that was presented to the jury. He further concedes that his attorneys were provided with his written statement to police well before trial; and, as the Court of Appeals observed in its opinion addressing petitioner's direct appeal, "[a] transcript of [petitioner's] statement to the investigating officers was given to him months prior to his trial pursuant to a discovery order." However, he claims that the prosecution violated the trial court's discovery order by failing to turn over the actual videotape until two days before trial; in petitioner's view, this constitutes a violation of his right to due process.

As previously observed, petitioner raised this claim on direct appeal and again in his state habeas petition. The state court found the claim insufficient to warrant habeas relief. This finding is neither contrary to nor an unreasonable application of federal law. Moreover, there is no constitutional right to discovery in a criminal case.[14] Weatherford v. Bursey, 429 U.S. 545, 559-60 (1977) ("It does not follow from the prohibition against concealing evidence favorable to the accused

---

[14] Miller does not contend that the recording contained exculpatory evidence.

31

that the prosecution must reveal before trial the names of all witnesses who will testify unfavorably. There is no general constitutional right to discovery in a criminal case . . . ."); see also Wardius v. Oregon, 412 U.S. 470, 474 (1973) ('the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded . . . ."). Accordingly, claim 13 will be dismissed.

## Claim 15

In claim 15, petitioner contends that the trial court violated his right to due process by denying his motion to disqualify the Office of the Commonwealth's Attorney because a part-time Assistant Commonwealth's Attorney had previously represented him. Petitioner contends that the attorney had represented him in domestic matters involving the child victim and rendered legal advice to him regarding his criminal charges in this case. Petitioner raised this claim on direct appeal and again in his state habeas petition. The state court found petitioner's claim insufficient to warrant habeas relief. This finding is neither contrary to nor an unreasonable application of federal law.

At the time of petitioner's arrest, Arthur Goff, a part-time Assistant Commonwealth's Attorney, was representing petitioner in a bankruptcy proceeding.[15] Mr. Goff had informed petitioner months earlier that he would be working for the Commonwealth's Attorney.[16] After his arrest, petitioner contacted Mr. Goff and informed him that he was in trouble. Mr. Goff informed petitioner that he was a part-time prosecutor, that he could not talk to petitioner about the charges,

---

[15] Mr. Goff had previously represented petitioner in an uncontested custody proceeding involving the victim and her infant brother, who were the children of a woman in Pennsylvania, and in unrelated domestic relations proceedings involving petitioner's estranged wife and their three children, who lived in Page County, Virginia. There were no allegations of sexual abuse in either of the domestic matters.

[16] At the January 7, 2004, hearing on the issue of disqualification of the Commonwealth's Attorney, Mr. Goff testified that petitioner, who was an electrician

> had done some work for me . . . at my home, and I had told him at that time . . . [in] July or August of 2002, that I was going to be working for the Commonwealth Attorney's office, and that, just as kind of a joke, I said, "So, if you get in trouble, I can't help you out."

32

and that petitioner needed a good defense attorney. Mr. Goff then gave petitioner the names of two attorneys and told him not to talk to the police.

At a hearing on October 22, 2003, petitioner waived any potential conflict. On December 10, 2003, he raised objections. The trial court held a hearing on January 7, 2004, on the issue of disqualification of the Commonwealth's Attorney. Mr. Goff testified that he had never discussed petitioner's civil cases or the merits of the criminal charges with the Commonwealth's Attorney and that he wrote a letter to the Commonwealth's Attorney immediately after petitioner was arrested, in which he disclosed that he had previously represented petitioner in various civil litigation, some of which remained pending. Mr. Goff further testified that he did not have access to the Office of the Commonwealth's Attorney's file in petitioner's criminal case. Mr. Goff maintained that, aside from disclosing the fact of his representation of petitioner, he had never discussed petitioner's cases with the Commonwealth's Attorney.

"The due process rights of a criminal defendant under both the Virginia and United States Constitutions are violated when the defendant is prosecuted by a Commonwealth's attorney who has a conflict of interest relevant to the defendant's case." See Cantrell v. Commonwealth, 229 Va. 387, 393-94 (1985) (holding that "[a] conflict of interest on the part of the prosecution" violates the Due Process Clause of the Virginia Constitution); Ganger v. Peyton, 379 F.2d 709, 714 (4th Cir. 1967) (citations omitted) (attempt by prosecuting attorney "in attempting at once to serve two masters . . . . violates the requirement of fundamental fairness assured by the Due Process Clause of the Fourteenth Amendment"). The specific due process right implicated when a Commonwealth's Attorney has a conflict of interest is the defendant's right to the "fair minded exercise of the prosecutor's discretion." Ganger, 379 F.2d at 712.

33

In the instant case, Mr. Goff did not act as petitioner's counsel by merely advising him not to speak with police and that he needed an attorney. Such advice is merely "common sense," as the trial court characterized it. Furthermore, Mr. Goff had no relevant information about the victim, other than that she was not petitioner's biological daughter, a fact that was not disputed, and the custody matters involving the victim and the separate custody matters involving petitioner's children did not involve any allegations of inappropriate conduct. Moreover, the record indicates that Mr. Goff was completely insulated from the case. Therefore, no actual conflict of interest existed that required the disqualification of the Office of the Commonwealth's Attorney. Accordingly, claim 15 will be dismissed.

### Claim 20

Claim 20 contends that the trial court denied a motion to withdraw filed by Mr. Webb Hudson, petitioner's court-appointed attorney, and that petitioner was therefore denied his right to counsel and to a fair trial. Petitioner raised this claim in his state <u>habeas</u> petition. As observed in the preceding factual and procedural summary, the state <u>habeas</u> court characterized that claim, alleging that the trial court denied petitioner's motion to withdraw, as a "false" and "baseless allegation," pointing out that "Mr. Hudson was allowed to withdraw on November 19, 2003, and A. Gene Hart was appointed." This finding is neither contrary to nor an unreasonable application of federal law.

The record indicates that Mr. Hudson moved to withdraw on July 9, 2003, citing petitioner's refusal to meet with him and his accusations that Mr. Hudson was conspiring against him. Petitioner subsequently underwent a court-ordered psychological evaluation, which determined, <u>inter alia</u>, that petitioner was capable of working with his attorney. Thus, on August 19, 2003, the Court denied

34

Mr. Hudson's motion. However, after petitioner was indicted, petitioner complained to the Court, in a letter dated November 11, 2003. And, in a letter dated November 12, 2003, petitioner asked Mr. Hudson to withdraw. At the conclusion of a hearing on November 19, 2003, the Court granted Mr. Hudson's earlier motion to withdraw, and appointed new counsel, Mr. Gene Hart, to represent petitioner, continuing the trial to January 2004. Plainly, the record demonstrates that, despite petitioner's protestations, Mr. Hudson was allowed to withdraw and new counsel was appointed well before the commencement of petitioner's trial.[17] Accordingly, claim 20 will be dismissed.

## Appellate Error – Claim 19

In claim 19, petitioner contends that he was denied the right to a fair appeal because the Court of Appeals, in its order of December 8, 2004, stated that the trial judge questioned petitioner's witnesses. Petitioner contends this statement was in error. Petitioner raised this claim in his state habeas petition. The state habeas court found that petitioner's allegation that the Court of Appeals "wrote false statements in the appeal decision," was "completely baseless" and that "the Court [of Appeals] actually stated that 'the trial judge also questioned [petitioner's] friend[18] and a forensic expert during the Commonwealth's case in chief.'" Accordingly, the state habeas court determined

---

[17] The court notes that an indigent defendant "has no right to have a particular lawyer represent him and can demand a different appointed lawyer only with good cause." United States v. Gallop, 838 F.2d 105, 107-08 (4th Cir. 1988) (citing United States v. Allen, 789 F.2d 90, 92 (1st Cir. 1986)). A "court can properly refuse a request for substitution of counsel when the defendant's own behavior creates the problem." United States v. DeTemple, 162 F.3d 279, 288-89 (4th Cir. 1998) (citing United States v. Morsley, 64 F.3d 907, 918 (4th Cir. 1995)). The trial court did not violate petitioner's rights by denying the initial motion to withdraw. Moreover, the trial court granted petitioner's request for substitute counsel within several days of the request.

[18] This friend happened to be petitioner's accomplice in the abduction of the victim.

35

that petitioner's claim was insufficient to warrant <u>habeas</u> relief. This finding is neither contrary to not an unreasonable application of federal law.[19]

### Ineffective Assistance of Counsel – Claims 4, 5, 6, 7, 16, 17, and 18

In claims 4, 5, 6, 7, 16, 17, and 18, petitioner contends that he received ineffective assistance of counsel.

The Sixth Amendment to the United States Constitution protects a criminal defendant's right to effective assistance of counsel. In order to demonstrate ineffective assistance of counsel, a petitioner must demonstrate that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and that, but for counsel's alleged deficiency, the result of the proceeding would have been different. <u>Strickland v. Washington</u>, 466 U.S. 668, 689-94 (1984).

In <u>Strickland</u>, the Court announced a two-prong test that the defendant must satisfy in order to demonstrate a denial of his right to effective assistance of counsel. <u>Id.</u> at 669. The first prong requires the defendant to prove that counsel's representation of the defendant fell below an objective standard of reasonableness. <u>Id.</u> at 688. The Court stated that this "performance" inquiry "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u> at 687. In judging the particular act or omission, the question is whether it was reasonable considering all the circumstances. <u>Id.</u> at 688. However, there is a strong presumption that an attorney is acting reasonably. <u>Id.</u> at 688-689. The

---

[19] Moreover, although petitioner raises this as a constitutional claim, he fails to argue any actual constitutional violation, nor can one be gleaned from the record. This claim attempts to attack a factual finding by the Court of Appeals of Virginia; however, petitioner's claim is factually incorrect. As the court has already reiterated, the Court stated that "the trial judge also questioned [petitioner's] friend and a forensic expert <u>during the Commonwealth's case in chief.</u>"

Case 7:06-cv-00611-GEC-mfu   Document 21   Filed 06/12/07   Page 36 of 40   Pageid#: 603

Court stated that the reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; Darden v. Wainwright, 477 U.S. 168, 186 (1986).

The second prong of the Strickland test requires the defendant to prove prejudice to his defense. This requires a showing that but for his attorney's errors, there is a reasonable probability that the outcome of the trial would have been different. Strickland, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. Counsel's errors, even if unreasonable, must be shown to have "actually had an adverse effect on the defense." Id.

The United States Court of Appeals for the Fourth Circuit has held that "counsel is not ineffective merely because he overlooks one strategy while diligently pursuing another." Williams v. Kelly, 816 F.2d 939, 950 (4th Cir. 1987). So strong is the Strickland presumption of counsel's effectiveness that, if counsel's acts could have been the result of trial tactics or strategy, the petitioner's complaint goes no further. Darden, 477 U.S. at 186. Furthermore, as an inmate's claims of ineffective assistance of counsel have generally been adjudicated on the merits in the Virginia state courts before the inmate filed his federal petition, a writ may only issue if the inmate can show that the state courts' decisions were either contrary to or involved an unreasonable application of clearly established federal law; in this instance, the Strickland test is the applicable clearly established federal law. 28 U.S.C. § 2254(d)(1-2); see Williams v. Taylor, 529 U.S. 362, 364-65 (2000). The United States Court of Appeals for the Fourth Circuit does not recognize the cumulative effect of counsel's errors in determining ineffective assistance of counsel. See Fisher v. Angelone,

37

163 F.3d 835, 852 (4th Cir. 1988) (rejecting petitioner's argument that the cumulative effect of counsel's errors deprived petitioner of a fair trial when no individual error was found to prejudice the petitioner).

**Claim 4**

In claim 4, petitioner contends that his attorney was ineffective for failing to interview and call to the stand thirty-three witnesses. Petitioner alleges that he prepared a list identifying all thirty-three witnesses, their telephone numbers, and their addresses. He further contends that he provided this list to Mr. Hudson, who represented him until November 2003, and Mr. Hart, who represented him at trial. Petitioner raised this claim in his state habeas petition. The state habeas court, as shown in the factual and procedural summary above, applied the Strickland test and found that petitioner's claim satisfied neither prong. This finding is neither contrary to nor an unreasonable application of federal law.

As a factual matter, Mr. Hudson provided an affidavit to the state habeas court in which he averred that petitioner never provided him with such a list. And, notably, Mr. Hudson's affidavit is supported by petitioner's aforementioned letters of November 11, 2003, and November 12, 2003, to the trial court and Mr. Hudson, respectively, in which petitioner alleged that the prosecutor and investigators had turned petitioner's two witnesses against him, with no mention of another thirty-one witnesses. As indicated in the foregoing factual and procedural summary, the state habeas court accepted Mr. Hudson's statement and discredited petitioner's claim that he had provided Mr. Hudson with any such list. This finding is entitled to deference in this court.

Moreover, as the state habeas court recognized, petitioner cannot prove that he was prejudiced by his attorneys' alleged failure to investigate or call these witnesses. And, although

38

petitioner contends he provided his attorneys with a complete list of thirty-three witnesses, he proffers the identities of only four, and provides affidavits from only three of these witnesses, who aver that they would have testified on his behalf had they been asked to do so. However, as the state habeas court recognized, these witnesses are "irrelevant," given that they provide no information whatsoever to indicate what their testimony would have been or how it would have been helpful to petitioner's case. This failure to proffer the testimony these affiants would have offered is fatal to petitioner's claim. See Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996) ("an allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced"); Bassette, 915 F.2d 940-41 (petitioner must allege "what an adequate investigation would have revealed"). "[W]ithout a **specific, affirmative** showing of what the missing evidence or testimony would have been, 'a habeas court cannot even begin to apply Strickland's standards because it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiency in counsel's performance.'" Anderson v. Collins, 18 F.3d 1208, 1221 (5th Cir. 1994) (quoting United States ex rel. Partee v. Lane, 926 F.2d 694, 701 (7th Cir. 1991)) (emphasis added).

Petitioner contends that three of his unnamed witnesses would have provided testimony that would have "explained the DNA." Petitioner fails to provide a specific affirmative showing of what the testimony would have been. This failure to proffer is fatal to his claim. See Beaver, 93 F.3d at 1195; Bassette, 915 F.2d at 940-41; Anderson, 18 F.3d at 1221.

Petitioner contends that one of the missing witnesses was the victim's therapist, who allegedly would have testified that the girl had been molested by her stepfather and, thus, knew how easy it was to get a man in trouble by claiming that he was sexually abusing her. Petitioner fails to

39

name this alleged therapist or proffer any proof that this therapist would have been willing to testify as petitioner claims. Assuming for the sake of argument that this therapist would have testified on petitioner's behalf, he still cannot establish prejudice. That the victim may have realized that she could get a man in trouble by saying he molested her is utterly irrelevant; assuming the statement's truth, it does nothing to impeach the victim or to exculpate petitioner. At any rate, such testimony would have been merely cumulative, as the record indicates that the victim testified that she had been molested by her stepfather and that she was aware that she could get petitioner in trouble by making sexual allegations against him. Moreover, given that the evidence includes letters in which petitioner admits having sex with the victim and that his DNA was recovered from the sample taken from the victim's internal vaginal-cervical swab, petitioner cannot show that this evidence, were it relevant and admissible, would have altered the outcome of his trial.

Petitioner contends that his remaining unnamed witnesses and the victim's mother would have testified that the victim told them that she contrived the allegations against petitioner to retaliate against him for being so strict. He further contends that these witnesses would have testified that the victim was forced into continuing the allegations by the prosecution and the investigators. These contentions are without merit. In the first instance, petitioner's assertion that the victim's mother would have testified on his behalf is belied by his letters to the victim, wherein he states that the victim's mother had turned against him and that he did not want her at the trial. Moreover, the testimony petitioner contends his attorney should have elicited from these witnesses, most of whom remain unnamed, would not have been admissible to impeach the victim, inasmuch as the record indicates that she admitted at trial that, after petitioner's arrest, she told numerous persons that her allegations against him were false. See Brown v. Peters, 202 Va. 382, 389 (1961) (if witness admits

40